**AFFIRMED and Opinion Filed July 28, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-01041-CV**

**KRISTIAN EDUARDO GONZALEZ, Appellant**
**V.**
**SOPHIA KATHERINE RIGG, Appellee**

**On Appeal from the 303rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV20-00303**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Goldstein
Opinion by Justice Goldstein

Kristian Eduardo Gonzalez appeals the trial court's protective order prohibiting him from having any contact with Sophia Katherine Rigg. In a single issue, Gonzalez argues the evidence is legally and factually insufficient to support the entry of the protective order. We affirm the trial court's protective order.

In August 2020, Rigg filed an application for protective order alleging Gonzalez sexually assaulted her and requesting a protective order prohibiting Gonzalez from, among other things, sexually assaulting Rigg, communicating with Rigg, going to within 500 feet of Rigg's residence or place of employment, and possessing a firearm.

On September 1, 2020, the trial court held a hearing on Rigg's application. Rigg testified that she and Gonzalez were friends for about four years in high school, but they never had any kind of dating or romantic relationship. Following graduation, Gonzalez and Rigg were members of an eight-person group consisting of four males and four females that took a road trip. Rigg testified that the sleeping arrangements on the trip involved sharing "beds at the Airbnbs or hotel rooms, sometimes even three to a bed." The night before the group planned to return to Dallas, they stayed in Memphis, and Riggs shared a bed with Gonzalez. Before going to bed, Rigg took melatonin that helped her "fall asleep and stay asleep." Rigg testified Gonzalez was aware Rigg took melatonin, and "everyone" had seen her taking melatonin "every night of that trip."

During the night, Rigg "heard a strange sound" and realized Gonzalez was masturbating next to her. Rigg testified she "assumed it was some strange dream." Rigg fell "in a deeper sleep" but at some point realized Gonzalez' hand was on her "worming up underneath [her] shorts" and Gonzalez put his fingers inside her. Rigg "didn't feel like it was actually happening" because she has "a very hard time waking up" and "everything felt like a dream." Rigg woke up at five or six in the morning, and Gonzalez was gone. Rigg went back to sleep. A few hours later, Rigg went to the bathroom and felt "a stinging burning" and "found there were scratches inside" her. At the time, Rigg testified, Gonzalez "didn't have trimmed nails."

At first, Rigg did not ask Gonzalez what happened because she "just wanted to get home." However, a few days later Rigg met Gonzalez at a public park where she "asked him what had happened, and he admitted that he had assaulted [her] while [she] was asleep." Rigg had her phone in her pocket recording the conversation, and Gonzalez told Rigg "it was real" and he thought Rigg "was asleep when he touched [her] and that he was overcome by lust and admitted what had happened." Rigg testified the conversation with Gonzalez lasted approximately an hour and a half, but the recording only lasted about four and a half minutes. The trial court admitted the recording. The conversation took place on June 17, and Rigg left a letter "talking about how [Gonzalez'] actions affected" her at Gonzalez' house "sometime in July" and made a police report in early August. At the conclusion of the hearing, the trial court granted a lifetime protective order. Following the entry of a written protective order in September 2020, this appeal followed.

In a single issue, Gonzalez argues the evidence was legally and factually insufficient to support the entry of the protective order. We review the sufficiency of findings supporting a protective order under the same standard used in evaluating the sufficiency of evidence following a jury verdict. *See Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Likewise, when the trial court acts as the factfinder, we review its findings under the same sufficiency standards. *Id.* When, as here, a party who does not have the burden of proof challenges the legal sufficiency of the evidence, we consider all the evidence

–3–

in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor, and disregarding contrary evidence unless a reasonable factfinder could not. *Id.*; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. If more than a mere scintilla of evidence exists, it is legally sufficient. *Lei Yang*, 629 S.W.3d at 670. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to reach differing conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Lei Yang*, 629 S.W.3d at 670.

In a factual sufficiency review, we consider and weigh all the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). When an appellant challenges an adverse finding on an issue on which he did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Four J's Cmty. Living Ctr., Inc. v. Wagner*, 630 S.W.3d 502, 516 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).

At the time of the offense and the proceedings culminating in the trial court's entry of a protective order, article 7A.01(a)(1) of the code of criminal procedure provided in relevant part that a person who was the victim of an offense under section 22.011 of the "Penal Code" could file an application for a protective order. Acts 2019, 86th Leg., ch. 955 (S.B. 194), § 3, eff. Sept. 1, 2019; Acts 2019, 86th Leg., ch. 1066 (H.B. 1343), § 1, eff. Sept. 1, 2019 (codified at Tex. Code Crim. Proc. Art. 7A.01)[1]. Penal code section 22.011 provides, in pertinent part, that a person commits an offense if the person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011.

Gonzalez argues that the factual allegations against him "need not be litigated." Instead, Gonzalez contends the evidence was insufficient to support the issuance of a protective order because Rigg's testimony and her affidavit established that the alleged offense occurred in Tennessee. Under the plain meaning of article 7A.01(a)(1), Gonzalez argues, "Penal Code" means the Texas penal code. However, the alleged offense took place in Tennessee, and "there is no element of the offense that occurred in the state of Texas." Gonzalez therefore concludes "the evidence

---

[1] Art. 7A.01 was in effect from September 1, 2019 to December 31, 2020 and was repealed and replaced effective January 1, 2021 as Art. 7B.001. *See* Acts 2019, 86th Leg., ch. 469 (H.B. 4173), § 3.01(2) repeals this article effective Jan. 1, 2021. For purposes of this opinion, we will be referring to Art. 7A.01 as it was the effective law at the time of the issuance of the protective order and as part of the record before the trial court.

was insufficient to establish that Ms. Rigg was a victim of a Texas crime and she did not have standing to file a protective order in a Texas court."[2]

Gonzalez cites no authority, and we have found none, to support his interpretation of article 7A.01.[3] Rigg's testimony established that Gonzalez intentionally caused the penetration of Rigg's sexual organ without her consent. We conclude this evidence was legally and factually sufficient to establish Rigg was the victim of an offense under section 22.011 of the "Penal Code." See TEX. PENAL CODE ANN. § 22.011; *Lei Yang*, 629 S.W.3d at 670; *Wagner*, 630 S.W.3d at 516. Art. 7A.01(b) provides that an application for a protective order may be filed in a district court in:

(A) the county in which the applicant resides;

(B) the county in which the alleged offender resides; or

(C) any county in which an element of the alleged offense occurred.

Art. 7A.01(b)(1)(A-C).

---

[2] Gonzalez concedes that victims of sexual assault can apply for a lifetime protective order against the alleged offender.

[3] While Appellant may not be prosecuted for the alleged offense in Texas, nothing in the plain language of article 7A.01 supports leaving unprotected a victim of sexual assault from the alleged offender, both Texas residents, by precluding the application and receipt of a Texas lifetime protective order based upon an alleged covered offense occurring in another state.

Accordingly, Rigg, a Dallas County resident could file her application for a protective order in Dallas County.  Tex. Code Crim. Proc. Art. 7A.01(b)(1)(A).  We overruled Gonzalez' sole issue.

We affirm the trial court's protective order.


/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

201041F.P05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KRISTIAN EDUARDO
GONZALEZ, Appellant

No. 05-20-01041-CV     V.

SOPHIA KATHERINE RIGG,
Appellee

On Appeal from the 303rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV20-00303.
Opinion delivered by Justice
Goldstein. Justices Partida-Kipness
and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SOPHIA KATHERINE RIGG recover her costs of this appeal from appellant KRISTIAN EDUARDO GONZALEZ.

Judgment entered this 28th day of July 2022.